PAT W. SMITH AND MARY L. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 10004-91
United States Tax Court
T.C. Memo 1994-188; 1994 Tax Ct. Memo LEXIS 189; 67 T.C.M. (CCH) 2806; April 28, 1994, Filed *189 Decision will be entered under Rule 155. For petitioners: Alvin Hitt. For respondent: James F. Kearney. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1985
$ 3,031
$ 152 *
--
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
1986
19,795
990 *
$ 4,949
* Fifty percent of the interest due on the deficiency.
After concessions by petitioners, the issues remaining for decision are: (1) Whether the understatement in petitioners' 1986 income as reflected in respondent's source and application of funds statement should be reduced to reflect inventory in petitioners' business on April 1, 1986. We hold that it should. (2) Whether the source and application analysis for 1986 should be adjusted to reflect petitioners' liability for cashing stolen Government checks in 1986. We hold that it should not. (3) Whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for 1985. We hold that they are. (4) Whether petitioners are *190 liable for additions to tax under section 6653(a)(1)(A) and (B) for 1986. We hold that they are. (5) Whether petitioners are liable for an addition to tax under section 6661 for 1986. We hold that they are. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. FINDINGS OF FACT We incorporate by reference the stipulations of facts and attached exhibits. Petitioners resided in Savannah, Georgia, at the time the petition was filed. In August 1985, petitioner husband purchased a 50-percent partnership interest in the White House Package Shop (White House), a liquor store. Gregory Carellas (Carellas) owned the other 50-percent interest in White House. A partnership return was filed for the short year ended December 31, 1985. The 1985 partnership return, prepared by certified public accountant Donald R. Coomer (Coomer), indicated that the partnership was on the cash method of accounting and a cost method of valuing its inventory. The partnership listed $ 25,884.34 for its ending inventory on December 31, 1985. Petitioners reported net *191 partnership income of $ 7,884 for 1985. On March 31, 1986, Carellas transferred his 50-percent interest in the partnership to petitioner husband. Coomer prepared a final partnership return for White House's short year ended March 31, 1986. The final partnership return indicated that it was on the cash method. The partnership's inventory at the beginning of the year was listed as $ 25,884.34, and its ending inventory on March 31, 1986, was listed as zero. Ending inventory in the amount of $ 28,845 was treated by Coomer as sold, with the resulting ending inventory of zero taken into account on the partnership's final return. Petitioners reported a net partnership loss of $ 437 for 1986. After March 31, 1986, petitioners operated White House as a sole proprietorship, reporting profit or loss on their Form 1040, Schedule C. Petitioners' 1986 joint return, prepared by Coomer but signed by someone else, indicated that White House was on the cash method and its inventory was valued at cost. The Schedule C listed zero for its opening inventory on April 1, 1986, and $ 45,311.96 for its ending inventory on December 31, 1986. In 1987, an investigation was begun by U.S. Postal Inspector *192 Joseph L. Martone (Martone), who determined that White House cashed $ 24,927 in stolen Government checks during the years 1985-87. White House paid out cash to the holders of the checks and then deposited the checks into one of its bank accounts. In 1986, 74 checks totaling $ 17,606 cleared White House's accounts in two different banks: CNS National Bank, predecessor to Nations Bank, and Savannah Bank and Trust (Savannah Bank). Nations Bank began advancing funds to White House in 1986 by covering overdrafts as the Government checks were returned. OPINION By statutory notice of deficiency, respondent determined deficiencies in and additions to petitioners' 1985 and 1986 Federal income taxes. Among other things, respondent determined, and petitioners have conceded, that their correct shares of partnership income were $ 19,430 and $ 15,348 for 1985 and 1986, respectively. Because petitioners failed to maintain adequate books and records for 1986, respondent resorted to an indirect method of proof, the source and application of funds method, with respect to the remainder of petitioners' income and determined that petitioners understated their 1986 income by $ 42,915. Petitioners *193 have agreed to all of respondent's adjustments, including the correctness of the source and application analysis, with the exception of two items discussed below. Respondent's determinations derived from the source and application of funds method and set out in the deficiency notice are presumed correct, and petitioners bear the burden of proving that the determinations are erroneous. Rule 142(a); ; . Inventory
In preparing the source and application of funds statement, petitioners assert that respondent failed to take into consideration $ 28,845 of White House's opening inventory on April 1, 1986. Petitioners maintain that an inventory was taken on March 31, 1986, reflecting a balance of $ 28,845, and that this amount was reported to Coomer for use in preparing the final partnership income tax return. Coomer testified that in preparing the final partnership return for the period ending March 31, 1986, he treated the ending inventory of $ 28,845 as sold and reported the ending inventory as zero for purposes of dividing up the *194 partnership assets. He then listed zero as the sole proprietorship's opening inventory. Although we do not understand the reasoning behind Coomer's treatment of the ending inventory, we are convinced that White House had inventory on its shelves as of March 31 and April 1, 1986, and that the inventory did not go down to zero leaving nothing on the shelves. We find that the inventory on April 1, 1986, had a value of $ 28,845. The amount of purchases reflected in respondent's source and application analysis assumes that White House had zero inventory as of April 1, 1986. Therefore, we conclude that the amount of purchases for White House appearing in the application portion of respondent's statement should be reduced to reflect $ 28,845 in existing inventory that was not purchased and did not require any cash outlay between April 1 and December 31, 1986. Stolen Check Accrual
Petitioners assert that respondent erred in failing to take into account their accrued liability to reimburse various banks for the payment of stolen Government checks cashed by White House during 1986. Petitioners argue that their deposit of stolen checks into White House's bank accounts created a *195 hidden liability during 1986. Petitioners presented the testimony of U.S. Postal Inspector Martone, who was in charge of investigating a series of stolen Government checks that were cashed by White House between 1985 and 1987. He presented a list of 74 checks totaling $ 17,606 which cleared through two of White House's bank accounts during 1986. He stated that one small check cleared through CNS Bank, predecessor to Nations Bank, and the remainder cleared through Savannah Bank, where petitioner husband said he opened an account in 1986. Floyd Whittington of Nations Bank confirmed that beginning in 1986, Nations Bank covered overdrafts resulting from the return of stolen Government checks in the White House account. As a result of an accumulation of these overdrafts, Nations Bank caused petitioner husband to sign a consumer installment note to the bank for $ 14,011.55 in 1989. Whittington said, however, that the original debt in 1986 started out much smaller, and that checks subsequent to 1986 built up the liability to the $ 14,011.55 amount. The note was paid in full in 1992, according to Whittington. No other evidence was presented regarding petitioners' liability to Savannah *196 Bank during 1986. Petitioners readily admit that the banks did not require them to sign any notes in 1986 for overdraft coverage. Beyond the one check that Martone said cleared Nations Bank in 1986, petitioners have failed to establish either the existence of, or the amount of, petitioners' liability in 1986 for stolen checks cashed by White House in that year. Sec. 461. Furthermore petitioners' argument assumes an accrual method of accounting which is inconsistent with the source and application of funds method necessitated by their failure to maintain adequate records. Sec. 446(b). Petitioners have thus failed to establish any basis for permitting a deduction for an accrued liability in 1986. We therefore conclude that the understatement in petitioners' 1986 income as determined in respondent's source and application of funds statement should be reduced only by the $ 28,845 opening inventory. Additions to Tax
Respondent determined that petitioners are liable for additions to tax under section 6653(a)(1) and (2) for 1985, and section 6653(a)(1)(A) and (B) for 1986. Section 6653(a) imposes two additions to tax if any part of the underpayment is due to negligence or *197 intentional disregard of rules or regulations. Negligence has been defined as a lack of due care or a failure to do what a reasonable person would do under the circumstances. (quoting , affg. in part and remanding in part ; see , affg. . Petitioners conceded their 1985 income tax liability as determined by respondent and did not argue against imposition of the negligence additions at trial or on brief. They therefore are deemed to have conceded without explanation those additions for 1985. Although they disputed the amount of the understatement of their 1986 Federal income tax liability, petitioners conceded without explanation that they failed to keep adequate books and records for White House in 1986. Petitioner husband mentioned only that Coomer kept the books and records for White House based on daily receipts and invoices. Neither *198 petitioner husband nor Coomer offered an explanation for the missing books and records. A failure to keep books and documents necessary to form a rational basis for income reported and expenses deducted supports a finding that petitioners negligently understated their income. , affg. ; . Petitioner did not argue against imposition of negligence additions for 1986 at trial or on brief. Petitioners thus have not met their burden of proving that the underpayment of tax for 1986 was not due to negligence. Accordingly, we sustain respondent's determination of additions to tax under section 6653(a)(1) and (2) for 1985, and under section 6653(a)(1)(A) and (B) for 1986. Respondent also determined that petitioners substantially understated their 1986 income tax liability, making them liable for the addition to tax provided for in section 6661. Section 6661(a) imposes a 25-percent addition to tax on the portion of any underpayment attributable to a substantial understatement of *199 income tax for any year. An understatement of tax is "substantial" if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return for the year. Sec. 6661(b)(1)(A). An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2). Petitioners did not challenge respondent's determination that the deficiency represented a substantial understatement of income tax either at trial or on brief. The amount of understatement as redetermined by this Court, together with petitioners' concession that they understated their 1986 partnership income by over $ 15,000, results in the applicability of section 6661. Accordingly, we hold that petitioners are liable under section 6661 for an addition to tax in 1986. In acordance with the foregoing, Decision will be entered under Rule 155.